# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Reginald V. Swain, Petitioner,

v.

Daniel Allen Bollinger and Jane Doe, a minor under the age of eighteen, Respondents.

Appellate Case No. 2021-000372

———————

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

———————

Appeal from Abbeville County
Matthew P. Turner, Family Court Judge

———————

Opinion No. 28078
Heard December 9, 2021 – Filed January 5, 2022

———————

## REVERSED

———————

Jane Hawthorne Merrill, of Hawthorne Merrill Law, LLC, of Greenwood, and Scarlet Bell Moore, of Greenville, both for Petitioner.

Heather Vry Scalzo, of Byford & Scalzo, LLC, of Greenville, for Respondent.

James Fletcher Thompson, of Thompson Dove Law Group, LLC, of Spartanburg, Amicus Curiae for Academy of Adoption & Assisted Reproduction Attorneys, Inc.

**JUSTICE HEARN:**   Petitioner Reginald Swain (Grandfather) appeals the denial of a request to terminate a father's parental rights and to adopt the child. The family court determined Grandfather proved a statutory ground for TPR, but concluded TPR and adoption would not be in the child's best interests because the child was already in a stable custody situation with her grandparents, Father had seemingly reformed his ways while in prison, and the child may benefit in the future from having a relationship with him. The court of appeals affirmed, and we granted certiorari. We now reverse.

## FACTS

A few months following Child's birth in 2011, Sunny Swain (Mother) informed her mother that she was using drugs again with Respondent Daniel Bollinger (Father), her husband at the time. Once Grandfather learned of this conversation, he called DSS, which removed the child and ultimately placed her with Grandfather and his wife. Mother lived with Father for a while afterwards, but upon completing rehab, she moved in with her parents. During this time, Father was arrested for criminal solicitation of a minor and was granted bond. Mother and Father separated in January of 2015 and divorced a year later. While out on bond, Father committed several more crimes, to which he pled guilty in 2017 and was sentenced to seven years in prison.

Father was ordered to pay fifty-seven dollars per week in child support in an action initiated by DSS, which he initially paid. However, his last payment occurred in 2014, approximately four years before Grandfather filed this matter. Over the course of Child's life, Father only saw her four times, two of which occurred when Child was an infant.

In July of 2018, Grandfather filed a complaint requesting the court terminate Father's parental rights and grant an adoption. Approximately a year later, the court held a contested trial. Mother testified about her tumultuous relationship with Father, his drug use, and his abusive behavior, both to her and to a family pet. Following her testimony, the court, *sua sponte*, asked Mother whether she had any concerns about her father being listed as Child's father on the birth certificate with her as Child's mother. Mother responded, "no" and indicated she did not think that would lead to any "psychological issues," as the court framed it.

During Father's testimony, he did not dispute any of Mother's testimony, contending that his behavior had been driven by his addiction to crack cocaine. He confirmed that he had never visited with the child unsupervised and admitted that she would not know who he was.[1] Once incarcerated, he began treatment and completed other programs primarily focused on character development.

The guardian ad litem's report indicated that Father thought it would be "weird" having Grandfather listed on the birth certificate, but the guardian ad litem did not share that concern, and Father never addressed the birth certificate during his testimony. At the conclusion of trial, the court asked the guardian whether she had any concerns regarding the birth certificate, and she replied, "I do think it is unusual, but the dynamics of the family, from my observations, I think it's something that can be explained and something that will not be a hindrance to the child as she grows older." The court followed up by asking whether this concern could create "any kind of psychological issues or anything with the child," to which the guardian responded that she did not think that would be the case. The court also questioned the benefit to TPR and adoption since the grandparents already had custody of Child. The court noted there were sufficient grounds to grant the TPR, but that it was an unusual case because of how the birth certificate would read. Ultimately, the court issued an order finding, "even though Plaintiff established grounds for the termination of Father's parental rights, Plaintiff failed to establish that it was in Child's best interests to terminate Father's parental rights." The court based its conclusion on the fact that the birth certificate would include Child's grandfather and mother as parents and a denial of TPR and adoption would not affect Child's stability since grandparents had legal custody.

The court of appeals affirmed in an unpublished, per curiam opinion, acknowledging Father's conduct could be grounds for TPR if this were a DSS adoption, but because the grandparents already had legal custody of Child, TPR would not promote stability. This Court subsequently granted certiorari.

## ISSUE

Did the court of appeals err in affirming the family court's conclusion that TPR and adoption are not in Child's best interests?

---

[1] We view Father's four isolated, brief, and supervised interactions with Child as merely incidental visitation rather than typical visitation by a non-custodial parent.

## STANDARD OF REVIEW

Appellate courts review the factual findings of the family court de novo. *Stoney v. Stoney*, 422 S.C. 593, 594, 813 S.E.2d 486, 486 (2018). The appellant has the burden to show that the preponderance of the evidence is against the finding of the family court. *Id.* at 595, 813 S.E.2d at 487.

## LAW/ANALYSIS

Grandfather contends the court of appeals erred in affirming the family court's decision to deny TPR and adoption. Specifically, Grandfather contends both courts ignored the recommendation of the guardian ad litem, conflated the status of custody of a child with the permanency of TPR and adoption, and erroneously focused on the appearance of the new birth certificate, ignoring Mother's consent to the adoption. Conversely, Father argues both courts correctly found Grandfather failed to meet his burden of demonstrating TPR and adoption were in Child's best interests. Exercising our de novo review, we believe TPR and adoption are in Child's best interests.

In order to terminate parental rights, the court must find by clear and convincing evidence that at least one of the twelve statutory grounds has been established and that TPR is in the best interest of the child. S.C. Code Ann. § 63-7-2570 (2010). "In a TPR case, the best interest of the child is the paramount consideration." *Stasi v. Sweigart*, 434 S.C. 239, 256, 863 S.E.2d 669, 678 (2021). Further, "The interests of the child shall prevail if the child's interest and the parental rights conflict." S.C. Code Ann. § 63-7-2620 (2010). The focus of this inquiry must be on "the child's perspective, and not the parent's, as the primary concern when determining whether TPR is appropriate." *S.C. Dep't of Soc. Servs. v. Smith*, 423 S.C. 60, 85, 814 S.E.2d 148, 161 (2018) (internal citation omitted).

At the outset, the sole issue before the court concerns the best interests of the child, as neither party disputes the family court's finding that Grandfather established grounds for terminating Father's parental rights. In addressing this question, the family court appeared to give undue weight to the fact that—should the court grant the relief requested—Grandfather and Mother would be listed as "parents" on Child's birth certificate. We find this concern perplexing since neither Mother, Grandfather, nor the guardian ad litem expressed any reservations about listing Grandfather as Child's father. Further, the modern day family structure reflects itself in many forms—a historical change from the nuclear family that society traditionally viewed as the norm. *See Troxel v. Granville*, 530 U.S. 57, 63 (2000) ("The demographic changes of the past century make it difficult to speak of an average American family.

The composition of families varies greatly from household to household."). Indeed, Grandfather and Mother, who consented to the adoption, simply want Child's birth certificate to reflect the only family she has ever known. Declining to grant TPR and adoption based in part on how the birth certificate would appear is not a proper consideration in ascertaining the best interests of the child.

Further, we reject the notion that because Grandfather already has custody, TPR and adoption would not promote stability for the child. Custody and adoption are clearly two distinct statuses, with the latter providing a level of permanency that a custody determination cannot. Without the adoption, Father would be free to attempt to inject himself into the child's life at any time, either by demanding visitation or by bringing an action for custody. When everyone—including Father—agrees that Child does not even know who he is, it is difficult to fathom how this could possibly be in Child's best interest. Moreover, as Grandfather's legal child, she would also qualify for Grandfather's social security benefits, which would clearly be in her best interests. *See* 20 C.F.R. §§ 404.358-62 (2020). Finally, it is significant that the only home Child has known is her grandparents', and the grant of TPR and adoption would afford legality and permanency to what has been her living situation since shortly after her birth. Notwithstanding Father's improvement while incarcerated, his actions came far too late to justify disrupting the Child's life when all she has ever known is living in her grandparents' home with her mother. *See generally Doe v. Roe*, 386 S.C. 624, 633, 690 S.E.2d 573, 578 (2010) ("Although we recognize Father filed this action and sought visitation when Daughter was nine *months* old, we nonetheless hold that this action simply 'came too late' for it to have any significant import.") (emphasis added); *S.C. Dep't of Soc. Servs. v. Robin Headden*, 354 S.C. 602, 611, 582 S.E.2d 419, 424 (2003) (noting a mother's conduct of returning to South Carolina after receiving notice of a request to terminate her parental rights "came too late" and recognizing that a court is not limited to considering only the months immediately before a TPR action is filed). We fundamentally disagree with the premise that a child's permanency should be held in abeyance for years until a parent is prepared to resume his or her parental responsibilities. *See generally Smith*, 423 S.C. at 86, 814 S.E.2d at 162 ("This Court cannot and will not prolong the uncertainty of Child's stability and permanency any longer.").[2] Moreover, at the time of the family court hearing in this matter, Father

---

[2] In its unpublished opinion, the court of appeals implied that a different result might attach had Child been placed in foster care through DSS. We reject any notion that there are two different legal standards for determining TPR and adoption. Whether the action is private or brought by an agency, the TPR statute and the best interests of the child control.

remained incarcerated so it is impossible to determine whether the lifestyle changes he claims to have made will remain permanent. Indeed, in questioning during oral argument, it became clear that Father has not sought to exercise any visitation with Child since the order was issued in this case.

## CONCLUSION

Because the focus is on the child's best interests rather than the parents' interest when determining whether TPR and adoption is appropriate, we reverse the court of appeals, terminate Father's parental rights, and grant the adoption.

**REVERSED.**

**BEATTY, C.J., KITTREDGE, FEW and JAMES, JJ., concur.**